The next case on the calendar is Time Warner Cable v. NLRB. Good morning, Your Honors. My name is Peter Clark. I appear on behalf of Time Warner Cable of New York City. Today's appeal arises from what the Administrative Law Judge and the National Labor Relations Board agreed was a mass blockade and unprotected work stoppage by Local 3 at Time Warner's Page Avenue, Brooklyn, New York Depot. It is undisputed that Local 3's blockade caused delays and missed service appointments for the remainder of the day after the work stoppage ended on April 2, 2014. The Board and the Administrative Law Judge, nonetheless, failed to explain their departure from relevant Board precedent, most particularly Martel Construction and Rapid Armored Truck, when they concluded that three of Time Warner Cable's questions to participants about the origins of the work stoppage and mass blockade violated the National Labor Relations Act. The Board's decision is unreasonable on the law, is irreconcilable with the Board's own prematurely limits and confounds an employer's ability to investigate unprotected misconduct, and second, it ignores the fact that Charter's three questions resulted solely from the union's unprotected conduct and Board precedent required this interrogation allegation to be dismissed. The Board said that there was, I'm pretty close to quoting here, I think, no need for activity of any individual prior to the event that was an unlawful labor practice, except specifically to identify additional individuals who were actual participants. Now, you're arguing that that's wrong. Yes, Your Honor. And it does seem to me to be incorrect because it would not encompass your ability to find out who planned the unlawful labor practice, the unlawful labor practice, who solicited participation in it. There could be a lot of things previous to actual participation by persons who didn't actually participate in it, and this would prevent you from asking about that. That's correct, Your Honor. We're pleased to agree entirely with you. But you're arguing that when it's in response to a ULP, that when it's in response to a ULP, you can ask about anything, and that seems to me to be going too far. Why should you be entitled to ask about anything just because you're investigating in response to what has been a ULP? Could you then properly go and ask about when they joined the union, who solicited them to join the union, what was said to get them to join the union, things like that that are clearly out of bounds? You're absolutely correct again, Your Honor. We could not ask those questions. We didn't ask those questions. You argue, it seems to me you are arguing that when you are investigating unlawful labor practice, you can ask anything. If we said that, we overstated, but I don't believe we said that. The questions in dispute here related specifically to the event, this event, that event, that event, meaning all referring specifically to the April 2nd mass blockade and work stoppage, and did not ask whether people supported the union generally, did not ask when they were solicited to join the union, did not ask anything like whether or not they supported the union. The specific questions in- What was the purpose? I know these aren't the three questions at issue, but the record says that there was also discussion of the employee's understanding of the collective bargaining agreement. What was that about? Well, that, excuse me, Your Honor, that was about a determination of the workers' arguable culpability or lack of culpability for engaging in a work stoppage, but none of those questions were found by the board to be an unfair labor practice, and I believe they're beyond the scope of what we need to address here, Your Honor. Yes, I get that. So the questions that are before us are who told you about this gathering? When did you receive notification of the gathering, and how was this event communicated to you? That's correct, Your Honor. I believe you correctly quoted them. I mean, who told you about the gathering doesn't tell them who was there. No, but it'll- Oh, I'm sorry, Your Honor. The board seemed to be sensitive to the fact that perhaps there would be a conversation about other union matters, and or someone might say, well, you know, this is an event that's going to happen, but I'm not going to go, or some other kind of conversation about some form of protected activity. I mean, how is it- how is- who told you about the gathering necessary or even- doesn't it have the danger of bleeding over into protected conduct? Well, the question was asked in order to determine whether the events were preplanned or spontaneous in terms of being a mass blockade or a work stoppage. There's a difference between a question, who told you there was going to be a mass blockade, and who told you about the gathering, because the gathering was billed initially as a gathering for discussion of appropriate union purposes. Well, first, the-  Oh, I'm sorry. So some people who were soliciting people to come to the gathering would have been doing so without any- possibly without any awareness of any intention or any evolution into unlawful activity. Well, without asking the question, we can't know what they were being solicited for. No, but if it's different than asking, who told you there was going to be a blockade? Yes, which may well have been the union business agent who was, in fact, planning a work stoppage and a blockade, and the company could learn that. The company was attempting- was inquiring to learn the degree of culpability of those who participated in addition to any additional participants that couldn't be identified on the video. And the board has said, in Altenbach's board, that the company has a right to main production and discipline, and investigation of misconduct must frequently be swift and effective to be effective. And I point out that in Fresh and Easy, the board pointed out that when a manager is talking to employees about unprotected conduct, the employees can be expected to understand that the employer is inquiring into a legitimate subject matter, the unprotected work stoppage and the unprotected blockade, which at the time of the questioning was already known to be unprotected. I grant you that if the questioning had occurred at the time of the solicitation of the meeting, when it wasn't yet known to be unprotected, then perhaps there would be a legitimate limit to what was being asked. But that limit does not apply here, where the employer is specifically asking about unprotected conduct, and the worker being inquired of knows it's unprotected- knows or should know it's unprotected conduct, and the board cases hold that that kind of reaction to unprotected conduct is not an unfair labor practice. Thank you. May it please the court, my name is Valerie Collins and I represent the National Labor Relations Board. This case is a little bit unusual in that the board actually agreed with a lot of the company's arguments when this case was before it. We're not here for the substantive- the main substantive violation of whether the company could discipline participants of a- of the blockade. We're here on just this interrogation violation, and all of the arguments that the companies make kind of hinges on one incorrect legal premise, that it is privileged to, so long as its conduct is in response to or in reaction to unprotected conduct, it's fair game. And that simply is not supported by the law. And in Alton Box, the board explains, and in this case, the board explains, yes, an employer does have a legitimate interest, and the board is there to balance the interest. But on the other side of the employer's legitimate interest in investigating potential misconduct is the employee's, and the employee's right to be not coerced or restrained in their protected conduct. And here, the company's entire case is premised on, because the blockade, or because the demonstration was later found to be unprotected, and we have some kind of minor quibbling with some of the language that the company uses, because the board did not hold it was an illegal blockade. It held that it was unprotected because it deferred to the arbitrator's conclusion that it violated a contractual no-strike clause. And there was some dispute there, so there's no holding that, there's no finding of the board that it was unlawful for that reason. So I wanted to highlight that, it's a minor point. Yes. So in this case, the company, I believe it was like about two dozen questions that they asked. So it kind of highlights the fact that the board does not, you know, shut down all investigations, because here, only three questions were found to have violated the act. So what was so pernicious about those questions? I mean, if you're doing an investigation to try and identify who's at, who's participated in the demonstration, and how it came to be, they seem like the questions that one might ask. Who told you about this gathering? How does that, why does that question cross the line? So the questions particularly, I guess I want to start with the how. So I think it was who, when, and how. How an employee learned that there was going to be, and there's nothing in the record that the employees knew that it was going to be any type of blockade. That's simply not there, there's no finding there, factually. So the fact that there was a union representative goes to the heart of Section 7. This case did not occur in a vacuum. There was a lot of kind of context. All going around the same time, there was an unfair labor practice charge filed. I think a couple days before, there were suspensions, they had these safety concerns, there were also concerns about employees not being permitted to bring union representatives during, you know, all of this other kind of stuff. So there was a lot of completely legitimate, unquestionably, and I don't believe it's contested, protected activity that was going on between employees, and between the union and its employees, and how, and how and who, you learn about kind of furthering those workplace concerns really goes to the heart of what Section 7 is intended to protect. And I would also like to highlight for the court that there's no finding that these particular discriminatees, or these particular people who were interrogated had any, knew, right? So there's a finding that the union business agent, I think they called it kind of like a pretext in terms of, you know, when he was testifying, there was some discredited testimony that he had no idea what he was planning. But there's no credited evidence that shows that these employees had any idea that this was going to turn into or be a blockade. In fact, they arrived after, afterwards. I thought that some of the people came in who were not on shift. So why isn't when an appropriate question? Well, I think because it's kind of not necessarily all that relevant when you're trying to determine who participated. But the relevancy isn't, I mean, relevancy isn't a reason for them not to ask it. They can get irrelevant information. But the question is whether they're asking about protected conduct. That's your rationale for who and how, and you've articulated a pretty decent argument about that. But what about when? Well, I think that they're all in combination. So, for example, if the when was, there's a big difference between, maybe the when was two days before. And so it even is more kind of attenuated. Well, then that would be even worse. It's even more kind of attenuated from the actual unprotected conduct. And so in context, all of that is going directly to the circumstances surrounding how employees are communicating with each other about valid workplace concerns. They communicate with each other about an illegal strike. And they conspire, or I shouldn't use the word conspire. They discuss and plan unprotected activity. The fact that they're discussing it and planning it and the relevancy of how long they've been doing it, given that some offer excuses, well, I was just there. That somehow protects the employer from inquiring it because doesn't really, some of that information isn't relevant with regard to the culpability of their unprotected conduct. Well, I think that the answer might be different. But to kind of take a step back, that's not what we have here. So there is no evidence of this kind of inducement or provoking or whatever. There's other kind of strong language that they use in their brief that these employers were all kind of conspiring to kind of do this unlawful deed or blockade. None of that. But some folks did show up who weren't going to work but came in to help with the blockade in any event. So obviously some people had knowledge of this and gained it at some point in time before the event occurred because it wasn't just like, well, people joined it as they showed up to go in and get their trucks and head out and fix people's troubles with their cable TV. So the record shows, the evidence shows that employees knew that there was going to be a gathering. The evidence does not support a finding that employees knew that there was going to be a blockade. And even in the discipline... It was kind of advertised as a safety meeting. And there's no evidence that it was advertised as let's go block the street. It became an unprotected activity because there was a blockade. And the blockade, the employer says, could have disrupted emergency vehicles. It disrupted the workplace. And we're entitled to find out how the blockade... And there were people at the event who were not scheduled to work. And we think there may have been planning. I guess I'm asking, would it be in all cases in which there's an unprotected activity, it's impermissible to ask about the planning, how this came to be? I mean, how do they know the answer to the question unless they ask it? So to answer the first part of your question, no. There is no in all circumstances situation where an employer can ask nothing, even if it's about protected activity. So it's not a categorical rule on either side? No, it's not. So if there's a blockade and the employer in this case wants to understand who participated in the blockade and was this planned in advance, is the second part of that question something the employer just can't inquire into? Well, so I'm not kind of authorized to say that can never be asked. But the second half of that question certainly raises a lot of problematic... it's a problematic road. And that's because the board looks at this under all of the circumstances. And while a legitimate investigation is completely valid and appropriate on one end, so is employees feeling like they're not going to be questioned about how they're communicating with each other. One of the points that the ALJ makes here is that you very well could have employees who were participants in the earlier discussions, but who didn't show up. And these types of questions speak directly to that. And that is undeniably protected. But wouldn't these questions have been perfectly appropriate if instead of saying about the gathering, who told you about the gathering, if the question had been when and where and under what circumstances and with who and who was present at the first suggestion that you ever heard, the first reference of any kind to an intention to blockade? That would be way more relevant, yes. That would be what? Relevant. Because that's speaking directly to just the unprotected conduct. Here what the board found is that these questions were vague enough so that they encompassed protected conduct as well. But if they were asking about discussion of a planned blockade, they could ask who was present, name everyone who was present while the blockade was being discussed, who first told you about it, who did you first hear speaking about it, anything like that. I'm not authorized to give a concrete answer, but that would certainly be a very strong case. That's not what we have here. There's nothing close. How can you justify what the board wrote in its order in explanation when it said there was no need for the employer to inquire into the activity of any employee prior to the event except specifically to identify additional individuals who were actual participants? That would leave out, that would leave out the appropriateness of inquiring into who was soliciting participation in the blockade, who was planning it. So the board explains in its order on page, excuse me, on page 4, that that is legitimate. I mean, these type of background questions are legitimate, the ones that you're suggesting. What is not. It's inconsistent with what the board said in its ruling. No, what the board said in its ruling is that there are limits and that. I read you the words. It said you're not allowed to ask about anything that happened prior to the blockade. The only thing you can ask about is actual participants, which leaves out all the prior planning and solicitation of the of the illegal activity. So the board makes clear that the employer is permitted and has the right to inquire about employees and unions participation in the event and that to a greater extent that it would. There's a lot of leeway here. And even in this case, it demonstrates that because there are two dozen questions. We're talking about three. The board didn't take issue with those other questions. So this isn't a situation in which a company is, you know, an employer is like, what on earth can we do? We have no idea what to do. How do we even, you know, figure out anything? Well, you would do well. Ask all the other questions. You're telling us on the one hand, perfectly all right for the board to ask pointed questions about previous active previous activity that was planning the unlawful event that would happen in the future. The employer, the employer asking the employer about the about the prior planning and solicitation and so forth of the unlawful activity. You're saying that's perfectly all right. And I'm reading you a statement from the from the from the board's opinion, which says you can't do it. You can only ask about actual participation. You can't ask about any prior anything that happened prior to the event. That's not compatible with what you're telling us. Those two are diametrically opposed. So one but one of them is just something you're saying in court, whereas the other one is part of the is what the board has put forth as its ruling. Well, you also have an explanation here. There were questions about what happened before the day. I asked you, is this a proper rule of law? Employers are not allowed to question about anything that happened prior to the unlawful activity other than they're not allowed to ask any such thing. All they can ask is to identify individuals who are actual participants in the activity. Is that rule of law? No, that. So I have two parts of this question. So there is no per se rule regarding any of those. The board looks at the circumstances, identify the unique procedural circumstances in this case, and in ways and balances what's before it. So there simply is no per se rule here. Before the ---- What do we do then about the fact that the board's order expressly states a per se rule that is the contrary of what you're telling us now? The board's order does not ---- What you're telling us is perfectly reasonable. What the board wrote in that sentence is perfectly unreasonable, and it's not consistent with the law. The board is responding to or was responding to the employer's argument that that was its goal in this investigation. So in response to that, it's simply highlighting that these questions don't go to what you say you're trying to figure out. And that is why looking at everything as a whole, the board found that a reasonable employee, because we're taking this from the perspective of an employee, those types of questions would have the tendency to be coercive because they speak directly to employee to employee and employee to union communications. If there are no further questions, I see I'm over time. Thank you, Ms. Cohen. Thank you. Thank you. The board's counsel suggested the context of this case is important, and I believe that's correct. We note in our brief that Local 3, the union that fomented this blockade and work stoppage, is a well-known labor outlaw in this circuit, and we've cited those cases. So there's a degree of suspicion whenever this union is planning a demonstration outside an employer that it will be conducted within the confines of the law. And that was true in this case, and the company, Time Warner Cable, was justified in looking into the circumstances and the culpability of people that helped to foment the event. So we do agree that the context is important. I want to ask you about one thing that your adversary said. Yes, Your Honor. She said that this was described by the board only as unprotected activity and not as an unfair labor practice, the blockade, and that it was prohibited because it was prohibited only by the CAB and not by law. Is it correct that the right to strike encompasses the right to blockade? No. The right to strike quite plainly does not incorporate the right to engage in a blockade, a mass blockade. It was unnecessary for the board, although I believe they discussed in a footnote, maybe even in text, that mass demonstrations are not protected. They chose to decide the case on the basis that it was a work stoppage, because that had already been adjudicated, well, adjudicated. It had already been determined by an administrator, an arbitrator. I'll get to the right form in a moment. It had been determined to be a violation of a no-strike clause and, therefore, was unprotected. It's unprotected whether it's a strike in violation of a no-strike clause, and it is equally unprotected if it's a mass blockade blocking ingress and egress and the like. There's no distinction under the National Labor Relations Act, and there's obviously no common-sense distinction, but, most importantly, there's no distinction under the Act. And my time is up unless any of your honors has a further inquiry. Thank you both. Thank you all. And we will take the matter under advisement.